# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

ALISHA K. MCCOLLOUGH, )
)
Plaintiff, )
)
) Case No. CIV-18-227-KEW
)
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
)
Defendant. )

## OPINION AND ORDER

Plaintiff Alisha K. McCollough (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 28 years old at the time of the decision. She has a high school education. She has worked in the past as a janitor, nurse aide, and dietary aide. She alleges an inability to work beginning January 31, 2016, due to limitations resulting from Attention Deficit Hyperactivity Disorder ("ADHD") and depression.

### Procedural History

On October 1, 2015, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's

applications were denied initially and upon reconsideration. On March 20, 2017, Administrative Law Judge("ALJ") Deirdre O. Dexter conducted a video hearing, presiding from Tulsa, Oklahoma. Claimant appeared from Muskogee, Oklahoma. On May 24, 2017, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on May 18, 2018, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at steps four and five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, Claimant did not meet a listing and retained the residual functional capacity ("RFC") to perform work at all exertional levels, with certain non-exertional limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error because: (1) the hypothetical questions to the vocational expert ("VE") were incomplete, resulting in "a faulty" RFC determination; (2) the ALJ failed to properly evaluate medical source evidence; (3) he failed to properly assess the consistency of Claimant's testimony with the evidence; (4) the step-four findings were in error; and (5) the step-five findings were in error.

**Hypothetical Questions to the Vocational Expert**

In her decision, the ALJ found Claimant suffered from severe impairments of ADHD and depressive disorder (Tr. 16-17). She determined Claimant could perform a full range of work at all exertional levels, with non-exertional limitations. Claimant could perform simple, routine, and repetitive tasks with regular breaks every two hours. The job should not involve over-the-shoulder supervision. She could perform low-stress work and could make simple work-related decisions. Claimant could occasionally interact with supervisors as needed to receive work instructions and to work in proximity to co-workers, but she could have no more than occasional direct work interaction with co-workers. Claimant should never interact with the general public, and the job should not require more than ordinary and routine changes in the work setting or work duties. (Tr. 16-17).

After consultation with a VE, the ALJ determined Claimant could return to her past relevant work as a janitor. (Tr. 23). The ALJ also made an alternative finding at step five that Claimant could perform the representative jobs of hand packager, conveyor line bakery worker, and poultry processor, all of which were found to exist in sufficient numbers in the national economy. (Tr. 24-25). As a result, the ALJ concluded Claimant was not under a disability from March 29, 2015, through the date of the decision. (Tr. 25).

Claimant contends the ALJ's hypothetical questions to the VE were incomplete, which resulted in "a faulty" RFC determination. Specifically, Claimant asserts the ALJ should have included her need for more frequent breaks than the usual every two-hour breaks, and the recommendation that she be allowed to transfer from one job to another and between job sites.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. *Hargis*, 945 F.2d at 1489.

The Court finds no error in the ALJ's RFC determination as it relates to the hypothetical questions posed to the VE. The hypothetical questions to the VE included those limitations found to exist by the ALJ and included in the RFC. (Tr. 16-17, 62-63). *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate

6

basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). Moreover, as discussed herein, the ALJ assessed Claimant with functional limitations consistent with the medical evidence in the record.

### Evaluation of Opinion Evidence

Claimant contends the ALJ failed to properly evaluate the medical source evidence, including opinions from consulting psychologists and evidence from psychologists who evaluated her when she was in tenth grade. She asserts the ALJ failed to properly weigh the various opinions.

Dr. Heather Ranger Kobel, Ph.D. conducted a psychological consultative examination of Claimant on December 7, 2015. The ALJ discussed Dr. Kobel's examination findings in detail in the decision. Dr. Kobel noted Claimant reportedly struggled with focus and concentration in school, but she graduated on time and was able to earn CNA and HHA licenses. Claimant was diagnosed with ADHD in high school and took Ritalin and later Adderall until she graduated. Claimant believed her main impediment to employment was that she was too slow. She reportedly could do a variety of daily activities, but indicated that such activities took her longer because of her distractibility. He frustration level was low, and she had difficulty managing money. Claimant's cognitive

7

test scores indicated she had a mild level of cognitive impairment, low frustration tolerance, and a significant problem with concentration. Although Claimant presented as depressed and somewhat irritable, she was alert and able to read, write, and comprehend adequately to complete screening forms. Claimant's intelligence was estimated to be in the below average range and she exhibited congruent social skills. She provided appropriate responses to questions related to judgment, insight, and abstraction. Claimant's immediate memory was intact, but she struggled with delayed recall, attention, and concentration. Dr. Kobel assessed Claimant with ADHD, primarily inattentive type, unspecified depressive disorder, and rule out intellectual disability. She also indicated Claimant could not manage her own finances. (Tr. 19, 739-44).

In July of 2016, Claimant was evaluated by psychologist Barbara Beach, Ph.D., through the Cherokee Nation. The ALJ discussed Dr. Beach's examination findings in detail in the decision. Dr. Beach noted that although Claimant's thought content seemed slow, it was appropriate for the interview. Claimant's performance on the Wechsler Abbreviated Scale of Intelligence – Second Edition (WASI-II) was in the low average range (82, full scale and 86 verbal). Claimant also scored in the borderline range on the Repeatable Battery for the Assessment of Neuropsychological Status (RBANS), measuring attention, language, visuospatial and

constructional abilities, and immediate and delayed memory. Dr. Beach diagnosed Claimant with attention deficit/hyperactivity disorder, combine presentation, and major depression, recurrent, mild. In her report, Dr. Beach provided Claimant with several strategies that could help her "compensate for her attention and memory difficulties," which the ALJ detailed in her decision. (Tr. 20-21, 761-65).

Claimant underwent a psychoeducational evaluation in September of 2004 when she was in tenth grade. She had a full scale IQ of 76, in the borderline range. Her verbal abilities were in the low range and her perceptual reasoning abilities were in the average range. (Tr. 776-71).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). She must provide specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a medical opinion. *Id*. Moreover, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . .

9

opinion[], [n]othing more [is] required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts v. Astrue*, 479 Fed. Appx. 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ discussed in detail Dr. Kobel and Dr. Beach's psychological examinations of Claimant. (Tr. 19-21). She gave "great weight" to Dr. Kobel's opinion that Claimant was incapable of managing her own funds. (Tr. 22). However, Dr. Kobel did not include any limitations as to Claimant's work functioning in her findings for the ALJ to weigh. Moreover, the strategies Dr. Beach provided to Claimant were characterized as strategies to help her "compensate for her attention and memory difficulties," and were not specific limitations for work functioning. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When an ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."); *Duncan v. Colvin*, 608 Fed. Appx. 566, 574 (10th Cir. 2015) ("Given that the ALJ did not reject the medical impairments found by [claimant's doctor] and there were no medical opinions regarding [claimant's] work-related functional limitations, there was no opinion on such matters by [claimant's doctor] for the ALJ

to weigh."). Thus, the Court finds there was no error by the ALJ with respect to the assessments of Dr. Kobel and Dr. Beach.

Moreover, the Court finds there is no error by the ALJ for failing to discuss Claimant's psychoeducational evaluation from 2004. Again, there was no opinion given as to any work-related functional limitations, and the ALJ discussed Claimant's test results from her examination with Dr. Beach. Dr. Beach noted in her examination that Claimant's test scores from 2004 were comparable to her scores on the cognitive assessment Dr. Beach administered. (Tr. 763). Thus, because the ALJ considered Dr. Beach's cognitive assessment of Claimant from July of 2016, the comparative results from 2004 were not significantly probative. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (finding ALJ is not required to discuss every piece of evidence in the record).

**Credibility Determination**

Claimant also contends the ALJ failed to describe the inconsistencies between Claimant's subjective allegations and the other evidence in the record.

Deference must be given to an ALJ's evaluation of Claimant's credibility, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of

11

findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls*, 206 F.3d at 1372.

As part of her evaluation of Claimant's sympotms, the ALJ noted the two-step process. (Tr. 17). She determined Claimant's medically determinable impairments could reasonably cause her alleged symptoms, but she found that Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record. (Tr. 19). In making these determinations, the ALJ summarized in detail reports by Claimant on the Adult Function Report and her testimony from the administrative hearing. The ALJ also summarized the medical evidence, noting that when taking medication, Claimant reported that the medication worked well and it helped with her focus. (Tr. 20-21). The ALJ further considered the opinions from the state agency psychologists with regard to Claimant's work-related limitations, ultimately concluding that

12

Claimant had greater limitations than those assessed by the state agency psychologists. (Tr. 21-22). The ALJ finally noted that the statements by Claimant's mother in the third-party function report was based upon causal observation and not upon objective medical examination and testing. (Tr. 22-23). The ALJ concluded that Claimant's RFC was supported by her reports that her medication worked well, she no longer had mood swings, she could focus better, and her treatment providers determined on most visits that her severity level was mild and she was stable. (Tr. 23). The Court finds no error with the ALJ's assessment of Claimant's credibility, as it is supported by the medical record.

### Step-Four Determination – Past Relevant Work

Claimant argues the ALJ erred at step four by finding her past relevant work as a janitor was performed at the level of substantial gainful activity. Claimant contends the only reason she could perform the janitor position was because she had a lenient supervisor and helpful co-workers.

Past relevant work is defined as work that occurred within the past 15 years, was of sufficient duration to allow the worker to learn how to perform the job, and was substantial gainful employment. *Jozetowicz v. Heckler*, 811 F.2d 1352, 1355 (10th Cir. 1987). The ALJ reviewed the record and noted in the decision that Claimant had worked as a janitor in the last 15 years. Claimant's earnings records revealed she worked at or above the substantial

gainful activity level. The ALJ determined Claimant worked a sufficient amount of time to learn the skills to return to the janitor position, as it was an unskilled job that required no more than one month to learn. She concluded the janitor position qualified as past relevant work. (Tr. 23). The Court finds no error with regard to the ALJ's determination that the Claimant's janitor position constituted past relevant work.

Claimant also contends that the ALJ improperly performed the step-four analysis required by *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). She continues to assert that the RFC is incomplete because the ALJ failed to include all limitations, and she also argues the ALJ failed at step two of the *Winfrey* analysis by failing to specifically determine the mental demands of Claimant's past work as a janitor. She further asserts that by failing to perform a proper step-two analysis that the ALJ could not perform a proper step-three analysis under *Winfrey*.

Step four of the sequential analysis requires the ALJ evaluate a claimant's RFC, determine the physical and mental demands of a claimant's past relevant work, and then conclude whether a claimant has the ability to meet the job demands of her past relevant work using the determined RFC. *Winfrey*, 92 F.3d at 1023. The ALJ may rely upon the testimony of the VE when making the determination of the demands of a claimant's past relevant work, but "the ALJ himself must make the required findings on the record, including

14

his own evaluation of the claimant's ability to perform his past relevant work." *Id*. at 1025; *see also Doyal*, 331 F.3d at 761.

The ALJ deferred entirely to the VE's testimony at the second step when determining the mental demands of Claimant's past relevant work.

> Assuming the claimant's residual functional capacity as assessed by the undersigned here, the vocational expert testified that the claimant would be able to perform the requirements of a janitor, per her description of the jobs and the D.O.T. descriptions. Therefore, in comparing the claimant's residual functional capacity with the physical and mental demands of the work as a janitor, I find that the claimant is able to perform this work as actually and generally performed, per the vocational expert's testimony.

(Tr. 23).

During the administrative hearing, Claimant testified about her job as a janitor, indicating that it involved cleaning the breakrooms and bathrooms. She estimated the heaviest amount of weight she lifted on the job was 50 pounds. (Tr. 50). She testified further that she became easily distracted when others talked to her or by other noise and would forget what she was doing. (Tr. 55-56). The VE testified that she had listened to Claimant's testimony and had reviewed her work history. When she described Claimant's work history with regard to the janitor position, the VE noted the Dictionary of Occupational Titles ("DOT") code, 381.687-014, and that the job was unskilled, SVP 2, and classified as heavy and medium as performed. (Tr. 60-61).

15

There was no testimony by the VE regarding the specific mental demands of Claimant's work as a janitor, nor are there any specific findings by the ALJ. *See Winfrey*, 92 F.3d at 1024 ("Here, the ALJ made no inquiry into, or any findings specifying, the mental demands of plaintiff's past relevant work, either as plaintiff actually performed the work or as it is customarily performed in the national economy."). However, even if the ALJ's step-two and step-three *Winfrey* analysis is insufficient, as discussed below, the ALJ made an alternative finding as step five that there is other work in the national economy which Claimant can perform.

### Step-Five Determination

Claimant asserts the ALJ's step-five determination that she could perform alternative jobs of hand packager, conveyor line bakery worker, and poultry processor is unsupported by her RFC and the job descriptions in the DOT. Claimant contends that the second hypothetical to the VE, which the ALJ later incorporated into the RFC, included a limitation against "fast-paced work," and that all the jobs the VE testified Claimant could perform required "working at a production rate of pace," which is synonymous with "fast paced."

A review of the hearing testimony reveals that the hypothetical posed to the VE, which was later incorporated by the ALJ into the RFC, did not include a limitation against fast-paced work. The ALJ asked the VE to assume a hypothetical individual

16

who could perform simple, routine, and repetitive tasks with regular work breaks every two hours. The ALJ indicated the job would not involve over-the-shoulder supervision. She indicated the work would need to be "low-stress," involving simple work-related decisions with only occasional interaction with supervisors as needed to receive work instructions and no more than occasional direct work interaction with co-workers. Claimant could never interact with the general public and the job should not require more than ordinary and routine changes in setting or duties. In response, the VE testified Claimant could perform her past relevant work as a janitor and other work, including the jobs of hand packager, conveyor line bakery worker, and poultry processor. (Tr. 62-63).

Unlike the case authority cited by Claimant, the "low-stress" limitation included in the hypothetical question to the VE and in the RFC was not defined by the ALJ as related to pace. The ALJ merely limited Claimant to "low-stress" jobs where she could make simple work-related decisions. The Court finds no error in the ALJ's alternative step-five determination.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence

of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 27th day of March, 2020.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE